

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

ENTERED
08/08/2014

| | | |
|---|---|---|
| IN RE: | § | |
| HUMBERTO SAENZ, JR; fdba PIZZA | § | CASE NO: 13-70423 |
| PATRON INC; fdba ESTRELLA | § | |
| VENTURES, INC. DBA PIZZA PATRON; | § | |
| aka SAENZ; fdba ARMAR ENTERPRISES | § | |
| INC, DELMA JEAN SAENZ | § | |
|     Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| PIZZA PATRON INC | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 13-07027 |
| | § | |
| HUMBERTO SAENZ, JR, *et al* | § | |
|     Defendant(s) | § | |

## MEMORANDUM OPINION

On March 7, 2014, Humberto Saenz, Jr. filed a motion to dismiss Pizza Patron Inc.'s ("PPI") complaint for Determination of Non-Dischargeable Debt. (Case No. 13-7027, ECF No. 12).  PPI's complaint fails to state a claim under § 523(a)(2), but properly asserts a § 523(a)(4) claim.

If Gomez successfully repleads his § 523(a)(2) claim, then PPI may proceed with its subrogation and common law indemnification claims under § 523(a)(2). PPI is granted leave to amend its complaint to include contractual indemnification claims under § 523(a)(2) and § 523(a)(4).  Accordingly, the motion is granted in part and denied in part.

### Procedural Background

In December of 2012, Jose Gomez and JMG Ventures, LLC ("Gomez") filed a state court lawsuit against Saenz, PPI, Lone Star National Bank and International Bank of Commerce ("IBC").  The lawsuit arises from a business transaction between Gomez and Saenz.  On

November 25, 2013, Pizza Patron, Inc. ("PPI") filed a Complaint for Determination of Non-dischargeable Debt under 11 U.S.C. § 523(a)(2), § 523(a)(4), and § 523(a)(6).  (ECF No. 1).  Gomez's state court lawsuit is attached as an Exhibit to the Complaint in this adversary proceeding.

On March 7, 2014, Saenz filed a motion to dismiss PPI's complaint.  (ECF No. 12).  In PPI's April 4, 2014 response, PPI withdrew its section 523(a)(6) claim.  (ECF No. 16).  Accordingly, the Court only needs to determine whether to dismiss PPI's claims under § 523(a)(2) and § 523(a)(4).

### Background Facts

Saenz operated a Pizza Patron restaurant in Rio Grande City.  PPI is the franchisor of the Pizza Patron franchises.  At various times between 2005 and 2012, Saenz was the franchisee of up to six Pizza Patron franchises in the South Texas area.  Gomez alleges that in April of 2009, Saenz approached Gomez about purchasing the Pizza Patron Rio Grande City Franchise.  Saenz allegedly advised Gomez that he was the franchise representative for the South Texas Region.  On October 15, 2009, Gomez signed a Purchase-Sale Agreement for Saenz's equipment and inventory, and for the Pizza Patron franchise in Rio Grande City.

Gomez claims that he paid over $350,000.00 for the franchise.  On February 8, 2010, Gomez obtained a $287,200.00 loan from Lone Star Bank in connection with the purchase.  Gomez alleges that Lone Star Bank instructed Saenz to provide fraudulent values on the equipment and fixtures in order to increase the loan to value ratio on the purchase of the business.  Gomez also contends that Saenz and IBC Bank created false profit and loss reports for the franchise and presented them to Gomez prior to the sale.

On March 8, 2011, Gomez closed the doors of the Pizza Patron franchise after determining that he could no longer afford to keep it open.  On March 10, 2011, the Pizza Patron Corporate Office inspected the franchise.  Prior to the inspection, Saenz allegedly instructed Gomez that he could not be present for the inspection and that he would attend for Gomez. Gomez claims that on March 10, 2011, Saenz removed Gomez's equipment and inventory from the franchise location without his consent.  On March 11, 2011, Saenz allegedly installed new equipment and resumed operation of the Rio Grande Pizza Patron franchise.  On April 11, 2011, Saenz informed Gomez that he was now the owner of the Rio Grande City Pizza Patron.  Gomez claims that Saenz never purchased the franchise back from Gomez.  Gomez alleges that Saenz sold the franchise to another buyer on October 8, 2012.

 Gomez asserts breach of contract, fraud, and conversion claims against PPI.  Gomez alleges that Saenz acted as PPI's agent in committing the alleged fraud and conversion. Gomez also seeks to recover against PPI based on PPI's alleged breach of the franchise agreement that Saenz purportedly transferred to Gomez.

PPI requests that if PPI is held to be derivatively or vicariously liable for the tortious conduct committed by Saenz, then PPI is entitled to a declaratory judgment against Saenz, jointly and severally, to the extent and in the amount of its derivative or vicarious liability. Additionally, PPI requested that Saenz's liability to PPI be declared non-dischargeable under § 523(a)(2) and § 523(a)(4).

### Rule 12(b)(6) Standard

Saenz's motion to dismiss for failure to state a claim for which relief can be granted is filed under Fed. R. Bankr. P. 7012, which incorporates Fed R. Civ. P. 12(b)(6).  The Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing

those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

### Rule 9

Fraud claims must, in addition, meet Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. Fed. R. Civ. P. 9(b). *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or

content of any misrepresentations). "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

**§ 523(a)(2)**

Section 523(a)(2) states:

(a) a discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) for money, property, services, or an extension, removal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debt—or is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

Subsections § 523(a)(2)(A) and (a)(2)(B) define similar, *but nevertheless different,* causes of action. *See Field v. Mans,* 516 U.S. 59, 64, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995).  Section 523(a)(2)(A) states that a debt obtained by "false pretenses, a false representation, or actual fraud" is not dischargeable, but it contains an exception: If a debt is obtained by a false "statement respecting the debtor's ... financial condition," the debt is dischargeable.  By contrast, § 523(a)(2)(B) states that a debt obtained by a false written statement "respecting the debtor's ... financial condition" is not dischargeable, provided certain conditions are met." *In re Ortiz*, 441 B.R. 73, 77 (Bankr. W.D. Tex. 2010).

For § 523(a)(2)(A) actions, the Fifth Circuit requires proof of common-law fraud. *In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) ("The operative terms in § 523(a)(2)(A), ... 'false pretenses, a false representation, or actual fraud,' carry the acquired meaning of terms of art ... [and] are common-law terms.").  For a debt to be non-dischargeable under § 523(a)(2)(A), the creditor must show that (i) the debtor made a representation; (ii) the debtor knew the representation was false; (iii) the representation was made with the intent to deceive the creditor; (iv) the creditor actually and justifiably relied on the representation; and (v) the creditor sustained an injury as a proximate result of its reliance. *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005).

## Analysis

PPI has failed to plead a direct fraud claim against Saenz to establish an exception to discharge under § 523(a)(2).  PPI merely alleges that "the Saenz Defendants actively concealed the Gomez sale from PPI, including making false and misleading representations to PPI regarding the ownership of the Rio Grande City franchise and source of royalty payments." (ECF No. 16 at 2).  These allegations are insufficient to sustain a claim that Saenz defrauded PPI. Accordingly, PPI's direct fraud claim is dismissed.

### Indemnification/Subrogation for Fraud Claims Under § 523(a)(2)

PPI also asserts derivative fraud claims under § 523(a)(2). Gomez's claims against PPI stem from the allegation that Saenz acted as PPI's agent in committing the alleged fraud and other torts described in the Amended Complaint.  PPI claims that it is entitled to indemnification and/or subrogation from Saenz if Gomez obtains a judgment against PPI for Saenz's tortious conduct.   Accordingly, PPI's § 523(a)(2) claim is based on Gomez's fraud claim against Saenz.

Saenz argues that PPI fails to state a claim for fraud under § 523(a)(2) because PPI has failed to sufficiently plead that it was defrauded by Saenz.  However, § 523(a)(2) does not state that the alleged fraud must be committed against the movant creditor. Nothing in this subsection precludes PPI from asserting an exception to discharge just because PPI wasn't the target of the debtor's alleged fraudulent conduct.

Saenz relies on *In re Cox* to support his claim that the alleged fraud must be committed against the plaintiff in order to fall under section 523(a)(2).  In *In re Cox*, the court held that "[p]laintiffs have failed to establish [that] they can maintain a § 523(a)(2) claim based on alleged misrepresentations made not to them but to a third party." *In re Cox*, 462 B.R. 746, 757 (Bankr. D. Idaho 2011).

PPI cites to *In re Burton*, where a court allowed a plaintiff to proceed with a § 523(a)(2) claim even though the alleged fraud was against a third party and plaintiff's claim sounded in vicarious liability and indemnity.  *In re Burton*, 2009 WL 537163 (Bankr. E.D. Tenn. 2009).  In *In re Burton*, the court rejected the debtor's argument that "non-dischargeability under § 523(a)(2)(A) and (6) is limited to a debt held by the claimant who was the direct or immediate target of the debtor's fraudulent intent or malicious conduct." *Id.*

> Unlike the court in *Menna,* this court is not concerned by the fact that Aviva will be unable to establish that it relied upon any misrepresentations by Burton. As long as the evidence establishes that GreenBank relied on the misrepresentations, and that the other elements of fraud are present as between Burton and GreenBank, then Avia's non-dischargeability claim, premised on its vicarious liability, may proceed.

*Id.*

The Court agrees with *In re Burton*.  Based on the Court's review of the relevant Supreme Court and Fifth Circuit case law, the Court finds that PPI's indemnification and subrogation claims for debtor's fraud could fall within § 523(a)(2).

In *Winkler*, the Fifth Circuit held that there was no "receipt of benefit" requirement under § 523(a)(2). *In re M.M. Winkler & Associates*, 239 F.3d 746, 749 (5th Cir. 2001). The Fifth Circuit held that "if a debt arises from fraud and the debtor is liable for that debt under state partnership law, the debt is non-dischargeable under § 523(a)(2)(A)." *In re M.M. Winkler & Associates*, 239 F.3d 746, 751 (5th Cir. 2001). In that case, the Court held that an innocent partner could not discharge a debt for fraud committed by another partner at his firm. The Court reasoned that even if the innocent partner had not personally benefited, a person with whom the partner was associated had "obtained" a benefit from the fraud. "The statute focuses on the character of the debt, not the culpability of the debtor or whether the debtor benefitted from the fraud… Thus, the plain meaning of the statute is that debtors cannot discharge *any debts that arise from fraud* so long as they are liable to the creditor for the fraud." *In re M.M. Winkler & Associates*, 239 F.3d 746, 749 (5th Cir. 2001).

In *Winkler*, the Fifth Circuit relied on the Supreme Court decision in *Cohen v. de la Cruz*. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998). In *Cohen*, the Supreme Court held that "§ 523(a)(2)(A) prevents the discharge of *all liability arising from fraud*, and that an award of treble damages therefore falls within the scope of the exception." *Id.* at 215. The Supreme Court reasoned that "[o]nce it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge." *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 1214, 140 L. Ed. 2d 341 (1998). The Supreme Court rejected the debtor's argument that a "debt for money, property, etc. is necessarily limited to the value of the "money, property, services, or… credit" the debtor obtained by fraud, such that a restitutionary ceiling would be imposed on the extent to which a debtor's liability for fraud is non-dischargeable." *Id.* at 213. The Supreme Court explained that

"[debtor's] argument is at odds with the meaning of "debt for" in parallel exceptions to [the] discharge set forth in § 523(a), which use "debt for" to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like." *Cohen v. de la Cruz*, 523 U.S. 213, 214, 118 S. Ct. 1212, 1214, 140 L. Ed. 2d 341 (1998).

Saenz's contention that PPI must be the target of debtor's fraud in order to sustain a § 523(a)(2) claim is at odds with the Supreme Court's broad interpretation. In *Cohen,* the Supreme Court stated that § 523(a)(2) prevents the discharge *of all liability arising from fraud.* In this case, accepting PPI's factual allegations as true, then any liability that Saenz would have to PPI would arise from Saenz's fraudulent conduct.[1] Moreover, although PPI may not have been the target of debtor's fraud, PPI will be a victim of the fraud if PPI is held vicariously liable. Permitting Saenz to discharge a debt that was incurred due to his fraud merely because PPI was not the target of the debtor's fraud is inconsistent with the basic policy that bankruptcy relief is reserved for the "honest but unfortunate debtor." *See Cohen v. de la Cruz*, 523 U.S. 213, 217, 118 S. Ct. 1212, 1216, 140 L. Ed. 2d 341 (1998) ("[t]he Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor."). Accordingly, the Court rejects the argument that the fraud debt is only excepted from discharge under § 523(a)(2) if Saenz defrauded PPI.

In order to sustain a derivative fraud claim under § 523(a)(2), the movant must (i) plead a theory of recovery showing that movant's liability to the third party arises because of debtor's fraud and (ii) that all of the elements of fraud are present between the debtor and third party. The current complaint fails to identify these two essential elements. PPI will be given an opportunity

---

[1] Each of Gomez's claims against PPI (breach of contract, fraud, and conversion) appear to rely on an agency theory for recovery against PPI.

to replead.  If the replead complaint still fails to assert all essential elements, the § 523(a)(2)
complaint will be dismissed.

### Indemnification/Subrogation for Fraud Claims Under § 523(a)(4)

Section 523(a)(4) excepts from discharge "any debt for fraud or defalcation while acting
in a fiduciary capacity, embezzlement or larceny." 11 U.S.C. § 523(a)(4).  The construction for
§ 523(a)(4), "any debt… for fraud," mirrors the construction of § 523(a)(2).  Accordingly, the
Court finds that PPI need not be the target of the debtor's fraud in order to sustain a § 523(a)(4)
claim.

Bankruptcy courts have applied the Supreme Court's broad interpretation of § 523(a)(2)
to other subsections of § 523(a).  For example, in *In re Delia*, in construing § 523(a)(9)'s
exception for drunk driving debts, a bankruptcy court extended the exception to a bar's
indemnification claim against the debtor. *In re Delia*, 353 B.R. 532 (Bankr. W.D. Mich. 2006).
In *In re Delia*, after drinking at the Wayside Bar, the debtor caused an automobile accident and
injured two people. *Id*. The injured parties sued and obtained a judgment against Wayside Bar,
who obtained a judgment against the debtor for indemnification. Wayside filed a complaint
seeking to have its judgment declared non-dischargeable under § 523(a)(9).  The court held that
the indemnification judgment was not dischargeable, noting that § 523(a)(9) excepts from
discharge "*any* debt" for death and personal injury caused by the debtor's drunk driving and
observing that the statute never refers to "victims" or any other categorization of eligible
creditors allowed to assert claims under the provision.  Accordingly, the Court finds that PPI
may proceed with its indemnification and subrogation claims under § 523(a)(4).

Because Gomez successfully stated a claim for fraud under § 523(a)(4), PPI may proceed
with its indemnification and subrogation claims under § 523(a)(4).  (ECF No. 1).   PPI's

§ 523(a)(4) claim is based on Gomez's allegations that Saenz converted Gomez's equipment, inventory, and franchise by deceiving Gomez.  Gomez asserts that "the Debtor committed fraud while acting in a larceny" when the Debtor stole $375,000.00 by wrongfully taking over the franchise.  Gomez contends that despite the fact that he purchased the equipment, inventory, and franchise for over $350,000.00, on March 10, 2011, Saenz removed Gomez's equipment and inventory from the franchise location without his consent.  On March 11, 2011, Saenz allegedly installed new equipment at the franchise and resumed operation of the Pizza Patron Rio Grande City location.  Gomez claims that Saenz accomplished this by instructing Gomez that he could not be present for a corporate inspection that was to take place on March 10, 2011.  On April 11, 2011, Saenz allegedly informed Gomez that he was now the owner of the Rio Grande City Pizza Patron.  Finally, on October 8, 2012, Saenz allegedly sold the franchise again to another buyer.

If PPI is held to be vicariously liable for Saenz's conduct, then PPI may have a right to indemnification or subrogation against Saenz.  If Saenz becomes liable to PPI under an indemnification/subrogation theory, then PPI's claim may be excepted from discharge under § 523(a)(4).

### Indemnification and Subrogation Claims

Saenz argues that even if indemnification and/or subrogation for debtor's fraud is non-dischargeable under § 523(a)(2) and/or § 523(a)(4), PPI has failed to plead claims for either indemnification or subrogation under Texas law.  Under Texas law, when a principal is held liable for the tortious conduct of its agent under the doctrine of respondeat superior, the principal may be subrogated to the rights of the injured person.  In *Knutson*, the Texas Court of Appeals explained:

> While the principal whose liability is predicated solely upon the doctrine of respondeat superior, not upon any wrong on his part, may be sued jointly with his

agent for a tort committed by the agent within the scope of his employment, they are not joint or concurrent tort-feasors. Although the principal may be required to respond to third persons by reason of the liability of its agent, he will be **subrogated** to the rights of the injured third person and may recover from his agent who is primarily liable.

*Knutson v. Morton Foods, Inc.*, 580 S.W.2d 876, 877 (Tex. Civ. App. 1979).

If we accept PPI's factual allegations as true, then PPI may have a right to equitable subrogation if Saenz successfully recovers from PPI under an agency theory. Accordingly, PPI has sufficiently stated a claim for subrogation.

At this time, it is not necessary to address whether other theories of equitable subrogation might also apply.

PPI failed to state a claim for contractual indemnity. Although PPI suggested that it may have a contractual right to indemnification, PPI failed to indicate whether an indemnity provision was included in any of the parties' franchise agreements. (ECF No. 1 at 6) ("PPI is entitled to… indemnification by the Saenz Defendants, including rights arising out of contract or common or statutory law."). Nor has PPI sufficiently plead a statutory right to indemnification. Accordingly, PPI's complaint relies on common law indemnity. In *Whitfield*, the Texas Court of Appeals articulated the application of common law indemnity under Texas law:

Common law indemnity, on the other hand, has been abolished in Texas except in cases where the defendant's liability is purely vicarious. Vicarious liability is liability placed upon one for the conduct of another, based solely upon the relationship between the two. Therefore, common law indemnity is recoverable by a defendant who, through no act of his own, has been made to pay for the negligence of another defendant based solely upon the relationship between the two defendants.

*St. Anthony's Hosp. v. Whitfield*, 946 S.W.2d 174, 177-78 (Tex. App. 1997).

PPI alleges that "[t]he Saenz Defendants' sole relationship with PPI was that of franchisor-franchisee" and that "PPI never knew anything about this alleged "sale" to Gomez."

(ECF No. 16 at 2).  If we accept these factual allegations as true, it appears that PPI's liability would be purely vicarious and based solely upon the relationship between the parties. Accordingly, PPI has sufficiently stated a claim for common law indemnity.

### Failure to Plead "Payment" Element

Saenz argues that PPI fails to state a claim for subrogation and indemnity because it has not plead payment of a debt.  Saenz cites to *Frymire* in support of his claim that payment is a necessary element of equitable subrogation. *See Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Intern., Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008) (The "party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief.").  According to Saenz, because actual payment has not and cannot be plead, PPI is unable to state a claim upon which relief can be granted.  Saenz extends this same argument to PPI's indemnity claim without citing to any authority.

Saenz's argument ignores the fact that an entity may hold a contingent right of payment against the debtor.  Under the Bankruptcy Code, a "creditor" merely means an entity that has a prepetition claim against the debtor, and "claim" means the "right to payment, whether or not such right is ... fixed, contingent, matured [or] unmatured ...."  11 U.S.C. § 101(5); 11 U.S.C. § 101 (10).  The Fifth Circuit has held that:

> claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence *was one reasonably contemplated by the debtor and creditor* at the time the event giving rise to the claim occurred.

*Matter of Ford*, 967 F.2d 1047, 1051 (5th Cir. 1992) (internal quotations omitted).

Saenz argues that PPI does not have a claim because "its subrogation claim was not reasonably contemplated by PPI at the time [of] the event giving rise to the claim occurred."

(ECF No. 17 at 3) (internal quotations omitted).  The Court disagrees.  All of Saenz's alleged wrongful conduct occurred prior to bankruptcy.  PPI and Saenz had a pre-petition franchisor-franchisee relationship.  Accordingly, PPI's indemnification and subrogation claims satisfy the Fifth Circuit's pre-petition relationship test and thus constitute claims under the Bankruptcy Code.  *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994) (adopting the "pre-petition relationship test" articulated in *In re Piper Aircraft Corp.*, 162 B.R. 619, 627 (Bankr. S.D. Fla. 1994)).

PPI has only requested that "to the extent that PPI is found to be derivatively or vicariously liable for tortious conduct committed by the Saenz Defendants, PPI is entitled to a *declaratory judgment* against the Saenz Defendants, jointly and severally, to the extent and in the amount of its derivative or vicarious liability." (ECF No. 1 at 6).  Even though PPI's indemnification and subrogation claims are contingent upon the adjudication of Gomez's lawsuit against Saenz and PPI, they are cognizable pre-petition claims.

### Leave to Amend § 523(a)(2) Claim and Contractual Indemnification Claim

In the alternative, PPI requests leave to amend its claims. (ECF No. 16 at 4).

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  A decision to grant leave is within the discretion of the Court, but Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872 (5th Cir. 2000) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.,* 195 F.3d 765, 770 (5th Cir. 1999)).  The Court does not have the discretion to deny leave to amend unless it has a substantial reason for doing so. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.),* 88 F.3d 311, 314 (5th Cir. 1996) (citations omitted). "In deciding whether to grant such leave, the court may consider such

factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

The court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

Federal Rule of Bankruptcy Procedure 4007(c) requires that complaints to determine the dischargeability of debt be filed no later than 60 days after the first date set for the Section 341 creditors' meeting. Fed. R. Bankr. P. 4007(c).  In this case, the first date set for the Section 341 creditors' meeting was September 27, 2013.  Accordingly, the deadline to file an objection to discharge was November 26, 2013.

Courts generally adhere to the strict deadlines for filing complaints objecting to the discharge.  However, some courts, including courts in the Fifth Circuit, have allowed a party to amend his complaint from one § 523(a) subsection to another § 523(a) subsection when the actions involved in both arise out of the same events.  When allowed, the new § 523(a) claim relates back to the date of the original § 523(a) claim. *See In re Fondren,* 119 B.R. 101, 104 (Bankr. S. D. Miss. 1990) ("Under the facts of this case, the allegations upon which the proposed amendment under section 523(a)(6) are based are the very same as those presented in the original complaint which alleged a violation under section 523(a)(2). Therefore, under Rule 15(c) ... the requested amendment here is allowable and will relate back to the date of the original

complaint."); *In re Heath,* 114 B.R. 310, 312 (Bankr. N. D. Ga. 1990) (a claim under § 523(a)(6) may relate back to an earlier complaint asserting a claim under § 523(a)(4) if it arises out of the same transaction or occurrence.); *In re Oxburn,* 203 B.R. 811, 813 (Bankr. S. D. Ga. 1996) (because the movant's § 523(a)(15) claim "arises out of the same transactions and set of facts giving rise to the timely filed § 523(a)(5) complaint, the amendment relates back to the date of original filing and is timely under Rule 4007(c).").

The Fifth Circuit has expressly acknowledged that courts allow amendments of § 523(a) claims filed after the Rule 4007(c) sixty-day period has expired to relate back to the original complaint.  In *Bercier v. Bank of La,* the Fifth Circuit barred the plaintiff from asserting a particular amended claim under § 523(a), but stated, "[w]e do not suggest that an amended complaint adding a ground of challenge to the dischargeability of a particular debt would not relate back, for purposes of Bankruptcy Rule 4007(c), to the time of filing of the same creditor's original complaint challenging the dischargeability of the identical debt." *Bercier v. Bank of La.,* 934 F.2d 689, 693 n. 7 (5th Cir. 1991).

The Court granted Gomez leave to amend his § 523(a)(2) claim.   If Gomez successfully repleads his § 523(a)(2) claim, then PPI may proceed with its subrogation and common law indemnification based fraud claims under § 523(a)(2).  If Gomez fails to sufficiently plead a § 523(a)(2) claim, then PPI's derivative § 523(a)(2) fraud claims fail.

Additionally, PPI is allowed to amend its complaint to include contractual indemnification claims under § 523(a)(2) and § 523(a)(4).  If PPI fails to state a claim for contractual indemnification by August 22, 2014, the contractual indemnification claim will be dismissed.

**Conclusion**

The Court will enter an Order consistent with this Memorandum Opinion.

SIGNED **August 8, 2014.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE